## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **J&K ADRIAN BAKERY, LLC,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **2:11-CV-4307-KOB** |
| **DAYTON SUPERIOR** ] | |
| **CORPORATION,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

This matter comes before the court on the Defendant Dayton Superior Corporation's "Motion to Dismiss or, in the Alternative, to Transfer" (doc. 6). This dispute arises out of copper theft and other damages to real property that occurred while Defendant Dayton Superior was in possession of the property, which Dayton leased from Plaintiff J&K Adrian Bakery. After Dayton entered into the lease, but before the copper theft, Dayton filed for bankruptcy under Chapter 11. Dayton argues that the Bankruptcy Court's order confirming Dayton's Chapter 11 plan precludes J&K Adrian's claim, or, alternatively, that the case should be transferred to the Bankruptcy Court. Dayton also argues that some of J&K Adrian's claims fail as a matter of law, regardless of whether the Bankruptcy Court's order applies. J&K Adrian filed a response to the motion, to which Dayton replied. The court has considered the parties' submissions, and for the reasons stated below, finds that Dayton's alternative motion to transfer the case is due to be GRANTED. For that reason, the court does not address the Motion to Dismiss.

## STATEMENT OF FACTS

At the motion to dismiss stage, the allegations of the complaint must be taken as true. *Lotierno v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). The court, however, may take judicial notice of relevant filings from Dayton Superior's bankruptcy "only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The court may not, however, take judicial notice of findings of fact by a bankruptcy court. *Orix Credit Alliance v. Delta Resources (In re Delta Resources)*, 54 F.3d 722, 726 (11th Cir. 1995).

Plaintiff J&K Adrian alleges that on or about December 21, 2001, Defendant Dayton Superior Corporation entered into a twenty-year commercial lease for property located at 1401 Meadowcroft Road in Pinson, Alabama with then-owner Hickory Partners, LLC. On or about October 28, 2005, J&K Adrian bought the property, which included assignment of all contracts and leases, including the lease with Dayton. On November 1, 2005, Dayton acknowledged that it was bound under the lease to J&K Adrian and that it would make all further lease payments to J&K Adrian.

On April 19, 2009, Dayton filed a petition for bankruptcy under Chapter 11, which proceeded before the United States Bankruptcy Court for the District of Delaware under the caption *In re Dayton Superior Corporation*, Case No. 09-11351 (BLS). The Bankruptcy Court entered an order confirming Dayton's first amended plan of reorganization on October 14, 2009. *See Dayton*, Case No. 09-11351 (BLS) (Bankr. D. Del. Oct. 14, 2009) ("the Confirmation Order"). Under the Confirmation Order, the Plan became effective as of October 26, 2009. The Confirmation Order declared that "all property and assets of the Debtor and its Estate . . . shall vest in the Reorganized Debtor . . . ." Confirmation Order at 16. The Confirmation Order defines the "Debtor" as the entity that initiated the Chapter 11

bankruptcy and the debtor-in-possession, *i.e.*, Dayton as it existed before and during bankruptcy.

The Confirmation Order included a paragraph addressing executory contracts and unexpired leases. That paragraph provided that Dayton rejected "[a]ll of the Executory Contracts and Unexpired Leases of the Debtor that are identified on Plan Schedule 4," and stated that "such rejection is hereby approved by this Court effective as of the Effective Date (the "**Rejection Date**"). . . ." Confirmation Order at 27–28 (emphasis in original). Schedule 4 to the Plan lists the lease for property at 1401 Meadowcraft Road, Pinson, Alabama, to which J&K Investments was the counterparty.[1]

The Confirmation Order also provided that, "with respect to the rejection of any unexpired lease of non-residential real property," the Rejection Date "shall occur on the later of (i) the Effective Date or (ii) the date on which the Debtor has vacated the applicable leased premises." Confirmation Order at 28. According to the Confirmation Order, "[a]ll proofs of claims with respect to Claims arising from or in connection with the Rejected Contracts, if any, must be filed with [the Bankruptcy Court] within thirty . . . days after the applicable Rejection Date . . . ." Confirmation Order at 28. Any rejection claim not filed within thirty days of the Rejection Date would "be forever barred from assertion against the Debtor or Reorganized Debtor, its Estate or property unless otherwise ordered by [the Bankruptcy Court] or provided for in [the Plan]." When defining the Rejection Date, the Bankruptcy Court did not clarify whether the "Debtor" referred to in that definition means only the Debtor as previously defined in the Confirmation Order—*i.e.*, the pre-petition debtor or debtor-in-possession—or whether the date the "Debtor" vacates may also include the date the Reorganized Debtor vacates. The Confirmation Order further provides all rejection claims "shall, as of the

---

[1] Although the counterparty to the lease listed in Schedule 4 does not bear the same name as the plaintiff in this case, both parties appear to assume that J&K Investments and the named Plaintiff, J&K Adrian, LLC, are interchangable.

Effective Date, be subject to the permanent injunction set forth in the plan and Confirmation Order."
Confirmation Order at 28.

On November 12, 2009, J&K Adrian submitted a rejection claim that contemplated rent owed and certain utility payments. On August 6, 2010, the Bankruptcy Court issued an order reducing and allowing certain overstated claims, among other things. This order reduced J&K Adrian's rejection claim from $1,843,288.00 to $1,237,396.49, and awarded J&K Adrian this amount as part of the Plan.

Although the Confirmation Order approved the rejection of Dayton's lease for the Meadowcroft Road property as of the Effective Date, October 26, 2009, Dayton retained possession until at least late 2010. The complaint alleges that in late 2010, Dayton attempted to terminate the lease with J&K Adrian. As part of the termination of the lease, the lease provisions required Dayton to return the leased property in substantially the same condition as it had found the property.

Dayton allegedly hired a third party contractor, Osborne Machinery Movers, to move Dayton's equipment and clean the warehouses, a process that Dayton allegedly supervised, through December 2010 and early January 2011. The complaint also alleges that on two separate occasions in late December, the police came out to the Meadowcroft Road property in response to calls about copper theft. According to the complaint, Dayton allowed the property insurance to lapse on or about December 31, 2010, before Dayton and its subcontractors had vacated the premises and turned control back over to J&K Adrian.

The complaint alleges that Dayton kept possession over the leased property "well into the month of January 2011." The complaint also alleges that on or about January 22, 2011, the police returned to the property to discover additional copper theft and damages. According to the complaint, a lack of electricity in the building also led to plumbing and water damages caused by burst pipes

4

during several nights of very cold temperatures.

Based on these damages, J&K Adrian alleges three counts against Dayton: Count I for breach of contract for failing to guard, repair, and insure the property as required by the lease; Count II for negligence for negligently failing to guard the property or take reasonable care in keeping the property safe; and Count III for wantonness for failing to take steps to secure the property after Dayton had knowledge of trespassing and theft.

Dayton moves to dismiss these claims under Rule 12(b)(6), or in the alternative, to transfer the action to Delaware Bankruptcy Court. Dayton argues that the counts alleged in J&K Adrian's complaint fall within the Confirmation Order's paragraph on rejected contracts, which provides that "[a]ll proofs of claim with respect to Claims arising from or in connection with the 'Rejected Contracts' must be filed with the Bankruptcy Court within thirty days of the Rejection Date." Confirmation Order at 28. Because the paragraph on rejected contracts defines the "Rejection Date" as the later of the Effective Date—in this case, October 26, 2009—or "the date on which the Debtor vacates the applicable leased premises," Confirmation Order at 28, Dayton argues that the Confirmation Order required J&K Adrian to file its claim against Dayton with the Bankruptcy Court within thirty days after Dayton vacated the premises, which J&K Adrian failed to do. J&K Adrian counters that its claims are beyond the scope of the Bankruptcy Court's Confirmation Order, and that its claims are against Reorganized Dayton because of Reorganized Dayton's post-confirmation activities.

**DISCUSSION**

A determination of the viability of J&K Adrian's claims hinges on the Bankruptcy Court's Confirmation Order. The paragraph on "Approval of Rejected Contracts" does not provide an

unambiguous answer to whether J&K Adrian's claims are covered within its scope, although a plain reading of this paragraph *suggests* that J&K Adrian's claims may be precluded. The paragraph states that the Rejection Date is the later of the Effective Date or the date the Debtor vacates the premises. In this case, the latter date would be the Rejection Date, because Dayton did not vacate the leased property until after the Effective Date. Moreover, J&K Adrian's claims appear to be "Claims arising from or in connection with the Rejected Contract[]," and would thus have to be filed with the Bankruptcy Court within thirty days after the applicable Rejection Date.

A closer look at the paragraph, however, reveals ambiguity in the definition of "Rejection Date" as applied to the facts of this case. Earlier in the Confirmation Order, the Bankruptcy Court states that "on and after the Effective Date, all property and assets of the Debtor and its Estate . . . and any property and assets acquired by the Debtor pursuant to the Plan or during the Chapter 11 Case shall vest in the Reorganized Debtor . . . ." Confirmation Order at 16. Thus, because the Rejection Date is defined as the later of the Effective Date or the date the *Debtor* vacates the premises, one interpretation of the Confirmation Order is that the Rejection Date can only be defined by the date that Debtor Dayton—the entity in existence before Reorganized Dayton emerged from Chapter 11—vacates the property. This interpretation of the term "Rejection Date" gains force from the fact that the Bankruptcy Court, within the very same paragraph on rejected contracts, later refers to "the Debtor or Reorganized Debtor." Confirmation Order at 28 ("Any and all Rejection Claims not filed within [thirty days after the Rejection Date] will be forever barred from assertion against the Debtor or Reorganized Debtor, its Estate, or property unless otherwise ordered by this Court or provided for in the Plan."), demonstrating that if the Bankruptcy Court intended to define the Rejection Date by the date the Debtor or the Reorganized Debtor vacated the property, it could have said so explicitly.

Interpreting this provision to refer only to the Debtor seems problematic, however, because this interpretation appears to render the alternative definition of "Rejection Date" superfluous. If the definition of "Rejection Date" refers only to the date Debtor Dayton vacated the property, and not the date Reorganized Dayton vacated the property, then the Rejection Date would always be the Effective Date. In other words, if Debtor Dayton vacated the property at any point before the Confirmation Order, the Effective Date would be the Rejection Date. After the Effective Date, Debtor Dayton could not possibly vacate the premises because Reorganized Dayton is the entity that exists after the Effective Date, and the Rejection Date would thus be the Effective Date.

Rather than risk misinterpreting the paragraph on rejected contracts and enforcing the Confirmation Order in ways that the bankruptcy court did not intend, the court concludes that most efficient way of proceeding is to transfer this case to the Bankruptcy Court that entered the Confirmation Order for further disposition. The court determines transfer of this case is warranted for three reasons.

First, the court concludes that it has a legal basis for transferring the case to the Bankruptcy Court. The Bankruptcy Court provided in its Confirmation Order that it "shall retain jurisdiction over the Chapter 11 Case and all matters arising under, arising in, or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law . . . ." Confirmation Order at 40. Because J&K Adrian brings a claim on a rejected lease that arises from events allegedly occurring before the Rejection Date, J&K Adrian's claim is a matter related to Dayton's Chapter 11 case, and is thus within the Bankruptcy Court's retained jurisdiction. Even had the Bankruptcy Court not explicitly retained jurisdiction, the Eleventh Circuit has recently explained that the nature of a bankruptcy court's jurisdiction—in rem jurisdiction over the Debtor's estate—logically gives the bankruptcy court the

power to enforce its own orders regarding its administration of the estate. *See Alderwoods Group, Inc. v. Garcia*, 2012 U.S. App. LEXIS 10891 at \*26–28. "When, in a Chapter 11 case, a bankruptcy court issues an order confirming a reorganization plan, that court retains postconfirmation jurisdiction to complete any action pertinent to the plan." *Alderwoods Group*, 2012 U.S. App. LEXIS at \*28 (internal citations omitted). Under this rationale, the Eleventh Circuit recently held that a Florida Bankruptcy Court lacked jurisdiction to determine whether a debt was discharged in a case litigated in Delaware Bankruptcy Court, and ordered that the case be transferred to the United States District Court for the District of Delaware under 28 U.S.C. § 1412. *See Alderwoods Group*, 2012 U.S. App. LEXIS at \*1, \*40–42. Accordingly, this court concludes that the Delaware Bankruptcy Court has jurisdiction to hear this case.

The second reason why this court will not dismiss this case but instead will transfer it is because the paragraph on "Approval of Rejected Contracts," assuming it does apply to J&K Adrian's claim, does not *absolutely* bar claims outside the thirty day window. Instead, this paragraph states that any claims not filed within thirty days of the Rejection Date "will be forever barred from assertion against the Reorganized Debtor, its Estate or property *unless otherwise ordered by* [*the Bankruptcy Court*] or provided for in the Plan." Confirmation Order at 28 (emphasis added). Thus, the terms of the Confirmation Order leave open the possibility that the Bankruptcy Court may order that the thirty day limitation not apply to the claim, a decision that is within that Court's exclusive jurisdiction to make.

Finally, the Bankruptcy Court that presided over the underlying bankruptcy and drafted the Confirmation Order is in the best position to interpret the Confirmation Order. *See In re Wedlo, Inc.*, 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996) ("[T]he bankruptcy court in which the chapter 11 case

is pending is in the best position to determine the issues underlying the motion to remand, abstain, or dismiss."). This court neither drafted the Confirmation Order nor had the opportunity to adjudge this case in the broader context of Dayton's Plan of Reorganization, and, therefore, is not well positioned to adjudge how J&K Adrian's claims should be handled in the broader context of Dayton's Chapter 11. Should the Bankruptcy Court determine that J&K Adrian's claims do not fall within the scope of the Confirmation Order, the Bankruptcy Court can then transfer this case back to this court to proceed on the merits of J&K Adrian's claims.

In granting Dayton's alternative motion to transfer, this court follows the procedure set forth in the Eleventh Circuit's recent decision in *Alderwoods Group*, where the Eleventh Circuit ordered that the district court transfer the case to the United States District Court for the District of Delaware under 28 U.S.C. § 1412, where that court could refer the case to the Delaware Bankruptcy Court pursuant to the District Court's procedures. *See Alderwoods Group*, 2012 U.S. App. LEXIS 10891 at *40–42 (citing 28 U.S.C. § 157(a) ("Each district court may provide that any or all . . . proceedings arising under title 11 or arising in or realted to a case under title 11 shall be referred to the bankruptcy judges for the district.")). Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." In this case, this court has concluded that the interest of justice requires allowing the Delaware Bankruptcy Court to interpret its own Confirmation Order to determine whether J&K Adrian's claims are precluded under that Order. Accordingly, the court will transfer the case to the United States District Court for the District of Delaware, where it may refer the case to the Delaware Bankruptcy Court under the District Court's own procedures.

**CONCLUSION**

For the reasons stated above, the court GRANTS Dayton's alternative motion to transfer the case. The court will enter a separate order transferring the case to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1412, which may then refer the case to the Delaware Bankruptcy Court under the District Court's own procedure.

DONE and ORDERED this 13th day of August, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE